IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION



| | |
|---|---|
| KERRY VIGIL DUNN, JR.,<br><br>Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION<br><br>Defendant | NO. EP-14-CV-358-MAT |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Kerry Vigil Dunn, Jr. ("Dunn"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.

1

# I. PROCEDURAL HISTORY

Dunn's past work was to mark material in preparation for sewing for Ready One Industries, a position he held from February 2008 until February 2010. (R. 35, 170).[2] He was twenty-eight years old at the time of his hearing before the Administrative Law Judge ("ALJ") in 2013. (R. 119). Dunn filed applications for DIB and SSI on October 13, 2010, in which he alleged disability beginning July 10, 1984,[3] due to cerebral palsy and dyslexia.[4] (R. 119-31, 164). After his applications were denied initially and upon reconsideration, Dunn requested a hearing. (R. 55-60, 63, 66-74). On March 19, 2013, he appeared with his attorney for a hearing before the ALJ. (R. 30-48). On May 1, 2013, the ALJ issued a written decision denying benefits on the ground that Dunn was capable of performing work that exists in significant numbers in the national economy. (R. 14-24). On June 26, 2014, the Appeals Council denied Dunn's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 4-9). Dunn argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.

# II. DISCUSSION

A. STANDARD OF REVIEW

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

---

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).
[3] Dunn's onset date was amended to February 1, 2010, at the hearing. (R. 34).
[4] At the hearing, Dunn's attorney argued that Dunn was disabled due to cerebral palsy, a learning disorder, attention deficit hyperactivity disorder ("ADHD"), and borderline intellectual functioning. (R. 35).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4)

whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980) (citations omitted).

## B. RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite any physical and mental limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1545, 416.945, 404.1529, 416.929. However, a claimant's own subjective complaints,

without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 416.908, 404.1528, 416.928, 404.1529, 416.929. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The ALJ found that Dunn had the RFC to perform light work[5] except he was: (1) limited to frequent but not constant fingering; and (2) limited to simple routine tasks with reasoning level 1.[6] (R. 18). Dunn argues that the ALJ failed to properly accommodate all limitations resulting from his mental impairments, and thus the ALJ's RFC finding is inconsistent with the evidence of the record. (ECF No. 22, at 4). According to Dunn, these limitations arise from several conditions, including ADHD, a learning disability, borderline intellectual functioning, and mental retardation. (ECF No. 22, at 4). Specifically, Dunn asserts these conditions affect his ability to: (1) attend and complete tasks; (2) acquire and use information; (3) function socially. (ECF No. 22, at 9). In support of this argument, the plaintiff's brief discusses his medical history in a single paragraph that runs five pages, with limited substantive analysis. (ECF No. 22, at 4-8).

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, at *6 (1983).

[6] "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Vol. II, App. C § III (4th ed. 1991).

Despite Dunn's severe mental impairments, including borderline intellectual functioning, a learning disorder, and anxiety, and his ADHD diagnosis, there is substantial evidence in the record to support the ALJ's RFC determination. In 2005, Dunn underwent a psychological consultative examination conducted by James W. Schutte, Ph.D. (R. 318-22). Dunn reported that he was capable of relating to others appropriately, and that he had friends. (R. 321). Dr. Schutte indicated that Dunn could follow simple storylines and simple instructions, and that he could carry out simple tasks. (R. 321). Dr. Schutte also noted that Dunn's cognitive functions, and specifically his attention and concentration, appeared somewhat limited, but concluded that Dunn's ability to make occupational, personal, and social adjustments seemed only moderately impaired. (R. 319, 321).

In 2011, Dunn underwent another psychological consultative examination with Dr. Schutte. (R. 377-81). Dunn's attention and concentration were measured to be in the extremely low range of the WAIS-IV Digit Span subtest, and Dunn reported that he could follow simple instructions only for short periods of time before he would get distracted. (R. 379-80). However, Dr. Schutte noted that Dunn's "[a]ttention and concentration appeared within normal limits during the interview, and no hyperactivity was observed, aside from [a hand tremor.]" (R. 379). The medical record further indicates that Dunn's "cognitive functions appeared grossly intact and he was alert and responsive to his surroundings." (R. 379). Dunn also reported that that he had friends and was able to get along with others, but that he felt nervous when he was in front of other people, required to talk to groups of people, and in crowds. (R. 379-80). Dr. Schutte remarked that Dunn's anxiety disorder only moderately impaired his ability to make occupational, personal, and social adjustments. (R. 380). Although these records clearly show

6

that Dunn had limitations in regard to his attention, concentration, and social abilities, they do not contain any medical opinions that contradict the ALJ's RFC determination.

Similarly, medical opinions that specifically rate Dunn's occupational and social limitations do not conflict with the ALJ's RFC determination. Dr. Schutte rated Dunn's global assessment of functioning ("GAF") as 55 in his 2005 exam, and 60 in his 2011 exam. (R. 321, 380). Both of these scores fall within the range indicating only moderate symptoms, or moderate difficulty in social, occupational, or school functioning. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text. rev. 2000) ("DSM-IV-TR").[7] In a Medical Source Statement from 2013, Ed Borrego, M.D., rated Dunn's abilities regarding work-related mental activities. (R. 446-47). That form defined a "moderate" rating as: "There is moderate limitation is this area but **the individual is still able to function satisfactorily.**" (R. 446) (emphasis added). Dr. Borrego rated Dunn's ability to understand and remember short, simple instructions and carry out short, simple instructions as moderate. (R. 446). Dunn's ability to interact appropriately with the public was only rated as slightly impaired, and his ability to interact appropriately with supervisor(s) and interact appropriately with co-workers was also rated as moderate. (R. 447). The moderate GAF classifications and Dr. Borrego's ratings indicating that Dunn "is still able to function satisfactorily" are congruent with the ALJ's RFC determination.

Furthermore, the record indicates that Dunn took medicine that lessened the limitations caused by his ADHD. "If an impairment reasonably can be remedied or controlled by medication

---

[7] Additionally, it should be noted that "[i]nstead of viewing GAF scores as absolute determiners of the ability to work, ALJs should make disability determinations on a case-by-case basis, considering the entire record." *Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015), *report and recommendation adopted*, No. 4:14-CV-756-A, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015).

or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citations omitted). Medical records from March 19, 2007, through February 4, 2013, establish that Dr. Borrego treated Dunn for medication management, including medication such as Dexedrine, Ritalin, and Adderall, and supportive psychotherapy for his ADHD. (R. 429-45). A February 4, 2009, medical progress note states that Dunn was doing well and denied having side effects from his medication. (R. 439). Another medical progress report from March 24, 2011, indicates that Dunn was doing well on his current dose of medication, and that he denied having any side effects. (R. 434). A March 7, 2012, medical progress note indicates that Dunn continued to do well. (R. 432). Finally, during the hearing, Dunn testified that he was still taking Dexedrine and that "[it] does help with my attention but it does make me nervous." (R. 36, 38-39). Based on the foregoing, the Court finds that the ALJ's RFC determination that Dunn can perform light work limited to simple and routine tasks with reasoning level 1 is supported by substantial evidence.

C. ABILITY TO MAINTAIN EMPLOYMENT

Dunn also appears to argue that his work history demonstrates his limitations preclude him from maintaining employment. (ECF No. 22, at 4). Generally, an ALJ is not required to explicitly find that a claimant can maintain employment because the ability to work on a regular and continuing basis is inherent in the definition of RFC. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). A finding of the ability to maintain employment may be necessary when a claimant's condition waxes and wanes in its manifestation of disabling symptoms. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *see also Singletary v. Bowen*, 798 F.2d 818, 821-23 (5th Cir. 1986). "A determination that a claimant is unable to continue working for significant

periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence." *Singletary*, 798 F.3d at 822.

The facts of this case did not require the ALJ to make a distinct finding as to Dunn's ability to maintain employment. Dunn has not presented sufficient medical evidence to show that his conditions significantly wax and wane. *See Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). A summary of Dunn's personal work history and self-reports about his inability to maintain employment are simply not enough. *See Singletary*, 798 F.3d at 823 (finding claimant could not maintain employment based in part on a doctor's conclusion that claimant was "an inadequate personality with periodic alcohol and drug abuse that leads to transient psychotic episodes in a person with low average intelligence, who has had some diffuse brain damage, has had a nomadic life and who had a chaotic rearing."). Thus, the Court holds that the ALJ did not err in implicitly finding that Dunn can maintain employment based on her RFC determination, which was supported by substantial evidence.

D. VOCATIONAL EXPERT HYPOTHETICAL

During the hearing, Dunn's attorney posed the vocational expert ("VE") a hypothetical about whether someone with Dunn's age, education, and previous work history would be able to maintain employment if he "would be off task more than 20 percent of the day." (R. 47). The VE responded that such a hypothetical individual would not be able to maintain any type of employment. (R. 47). An ALJ is not required to consider the response to "a hypothetical question composed of assumptions subsequently found unsupported by medical evidence." *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The ALJ did not include in her RFC determination

a limitation that Dunn would be off task more than 20 percent of the day, and thus the ALJ was not required to consider the VE's response to that hypothetical question.

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this 30th day of June, 2017.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE